# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
| --- | --- |
| ANDREW CHIEN, *pro se*,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES, *et al.*,<br><br>    Defendants. | Civil Action No. 17-2334 (CKK) |

## MEMORANDUM OPINION
(September 23, 2019)

Presently before this Court is a [38] Motion to Dismiss filed by Defendants The United States of America (the "United States") and the United States Securities and Exchange Commission  (the "SEC").[1] Defendants move to dismiss *pro se* Plaintiff's [29] First Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), on grounds that this Court does not have jurisdiction over the causes of action alleged by Plaintiff Andrew Chien ("Plaintiff" or "Mr. Chien") and further, that Plaintiff has failed to state a claim upon which relief can be granted.

Also pending before this Court are two motions filed by Plaintiff subsequent to the filing of the Motion to Dismiss: (1) Plaintiff's [40] Motion which requests: (a) an Injunction Order pursuant Rule 65(a); (b) an adjustment of the time for Defendants to file a reply in support of their Motion to Dismiss; and (c) the filing of an administrative record, and (2) Plaintiff's [42] Motion for Approv[al] [of a ] Supplemental Pleading to Add Brant

---

[1] Pursuant to the Motion to Dismiss, the United States has been substituted as defendant in place of SEC employee Mara L. Ransom and SEC Commission Kara M. Stein.  This substitution of defendants will be addressed in this Memorandum Opinion.

Morris as a Defendant Based on Rule 15(d). Pursuant to a November 13, 2018 Minute Order, this Court DENIED Plaintiff's request for an adjustment of time for Defendants' reply and DEFERRED ruling on Plaintiff's motion for an injunction order and the filing of an administrative record and his motion to add Brant Morris as a defendant.

In the November 13, 2018 Minute Order, this Court noted that while Defendants had replied to Plaintiff's [40], [42] motions, Plaintiff had not filed a reply in support of either motion, and the time for doing so had passed. Approximately two weeks later, Plaintiff filed a [47] Supplemental Memorandum (reply) in response to his [40] Motion for injunctive relief and filing of an administrative record and a [48] Supplemental Memorandum (reply) in support of his [42] Motion to add Brant Morris as a defendant. At the same time, Plaintiff filed a [46] Supplemental Memorandum (surreply) in support of his [41] Opposition to Defendants' motion to dismiss.

Notably, Plaintiff did not seek approval from opposing counsel or leave of court to late file any reply or to file a surreply, and in the normal course, such documents filed by Defendant would be stricken from the docket as untimely and/or unapproved. In the interest of judicial efficiency, however, since this Court is resolving all outstanding motions by means of this Memorandum Opinion and the accompanying Order, and because the Plaintiff in this case is *pro se*, for purposes of this Memorandum Opinion only, the Court will treat Plaintiff's [47] Supplemental Memorandum as a reply to his [40] Motion for injunctive relief and filing of an administrative record and his [48] Supplemental Memorandum as a reply to his [42] Motion to add Brant Morris as a defendant. Plaintiff's [46] Supplemental Memorandum (surreply) in support of his Opposition to the Defendants' Motion to Dismiss will be considered by this Court only to the extent that it is responsive

to the issues involved in this case and addressed in the Defendants' Motion and/or their Reply. *See* Pl.'s Surreply, ECF No. 46, at 7-8. The remaining portions of Plaintiff's Surreply (pages 1-6) are not responsive to the Defendants' pleadings insofar as Plaintiff attempts to allege claims pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, which have no bearing on the existing claims against the Defendants in this case. Accordingly, all three Motions are fully briefed and ready for resolution.[2]

## I. Background

Plaintiff's [29] First Amended Complaint discusses in detail his business conflicts with a third party, Richard Freer, which are also the subject of a civil action pending before this Court, captioned *Chien v. Freer*, 18-cv-2050. In that case, *pro se* Plaintiff Andrew Chien alleges claims for common law tort, securities law violations, RICO and fraud. The Complaint in that case also makes references to certain debt collections against Mr. Chien, which are not an issue in the instant case before this Court. As a preliminary matter, this Court notes that Mr. Chien filed in this case documents entitled [49] "Supplement[ ] to Support Chien's Pleadings from Fair Debt Collection Practices Act" and [50]

---

[2] The Court has specifically considered the following documents: Pl.'s App'x I, ECF No. 6; Pl.'s App'x II, ECF No. 22-2; Pl.'s First Am. Compl, ECF No. 29; Defs' Mot. to Dismiss, ECF No. 38 and the Mem. in Support of Mot. to Dismiss, ECF No. 39; Defs' Westfall Certificate, ECF No. 39-1; Pl.'s Opp'n to the Mot. to Dismiss, ECF No. 41; Pl.'s App'x III, ECF No. 41-1; Defs' Reply in Support of Mot. to Dismiss, ECF No. 45; [the aforementioned portion of] Pl's Surreply to the Mot. to Dismiss, ECF No. 46; Pl.'s Mot. for Injunction Order and Admin. Records, ECF No. 40; Defs' Opp'n to Mot. for Injunction Order and Admin. Records, ECF No. 44; Pl.'s Reply in Support of Mot. for Injunction Order and Admin. Records, ECF No. 47; Pl.'s Mot. to Add Brant Morris, ECF No. 42; Defs' Opp'n to Mot. to Add Brant Morris, ECF No. 43; Pl.'s Reply in Support of Mot. to Add Brant Morris, ECF No. 48.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

"Supplement[ ] (2) to Support Chien's Pleadings from Fair Debt Collection Practices Act." Because these documents are unrelated to the claims pending in this matter, the Court orders that these two Supplements, ECF Nos. 49 and 50, shall be STRICKEN from the docket in this case.

To put in context the origins of Plaintiff's dispute with the SEC, the Court will briefly review the ongoing disputes between Mr. Chien and Mr. Freer, although many of these disputes pre-date Defendants' involvement. Mr. Freer was a former officer of Commonwealth Biotechnologies, Inc.("CBI"), which filed for bankruptcy in January 2011. First Am. Compl., ECF No. 29, ¶¶ 16, 17, 23, 28. Mr. Freer served as an operating director of CBI during bankruptcy, while Mr. Chien was either a CBI shareholder or a representative of Bill Guo, another shareholder and sometime Chairman of CBI's board. First Am. Compl., ECF No. 29, ¶¶ 15, 21. Mr. Freer made compensation claims from CBI, while Mr. Chien claimed that Mr. Freer was trying to embezzle money from CBI, and both parties sought control of CBI. *Id.* at ¶¶ 17-18, 20-21.

Ultimately, Mr. Freer sued Mr. Chien for defamation in a Virginia state court in February 2012, and he obtained a default judgment in the amount of $1,600,000.00, plus interest. *Id.* at ¶¶ 22, 26. Mr. Freer collected on the judgment by initiating a debt collection action in Connecticut in September 2012. *Id.* at ¶¶ 11-12. Mr. Chien was incarcerated in Virginia twice for contempt of court in relation to Mr. Freer's defamation action. *Id.* at ¶¶ 10, 31-32. In February 2014, presumably in partial fulfillment of the default judgment, a Virginia state court ordered delivery of China Bull Management, Inc. ("CHBM") stocks to Mr. Freer and in September 2014, Island Stock Transfer, Florida issued a stock certificate for shares of CHBM for Mr. Freer. *Id.* at ¶37. Through voting these shares, Mr. Freer tried

to usurp Mr. Chien's control of CHBM, which Mr. Chien contested. *Id.* at ¶¶ 38-39. Mr. Freer re-registered CHBM from Nevada to Virginia in December 2016, and Mr. Chien re-registered CHBM from Nevada to Wyoming as of January 2017. *Id.* at ¶¶ 46-47, 54.

**A. The SEC's Role**

On December 9, 2016, Mr. Freer attempted to update the EDGAR access codes for CHBM with the SEC, while Mr. Chien apparently was permitted to use the EDGAR access codes to make filings on behalf of CHBM as late as December 2016.[3] First Am. Compl., ECF No. 29, ¶ 45. The SEC's involvement with Plaintiff followed these competing attempts to access the SEC's EDGAR system. On February 13, 2017, Mara Ransom ("Ms. Ransom"), an SEC employee in the Division of Corporate Finance, which administers EDGAR codes, sent Mr. Chien a letter from the SEC indicating that "Richard J. Freer had[d] challenged Chien's representation of CHBM." *Id.* at ¶ 3. In that letter, she noted that "[w]hile the information [the SEC] ha[d] considered to date [was] not dispositive, it [did] raise sufficient concerns to justify suspending any company filings made on EDGAR that ha[d] not yet been processed and disseminated, as well as deactivating the company's CIK number and EDGAR access codes until the question is resolved." App'x to the Pl's Compl., ECF 6, at 4 (A1).[4] The letter suggested that Mr. Chien could provide one of two types of documentation to establish who controlled CHBM to support reactivating the company's CIK number to allow future filings. *Id.*

Mr. Chien has acknowledged that Mr. Freer provided the SEC with some forms to

---

[3] EDGAR (Electronic Data Gathering Analysis and Retrieval) is an online public database for the SEC.

[4] The Court refers to the page numbers assigned by the Court's Electronic Case Filing system after a document is docketed.

support his claim that he should receive EDGAR access, but he alleges that those forms were false, and they did not establish that Mr. Freer as a "control person of CHBM." First Am. Compl., ECF No. 29, ¶¶ 3-4, 48-55. Mr. Chien does not indicate that he provided any documentation to the SEC, as was requested in the February 13, 2017. On December 14, 2017, the SEC released the EDGAR access codes for CHBM to Mr. Freer. *Id.* ¶ 4; Pl.'s App'x II, ECF No. 22-2, at 3-4. Mr. Chien contends further that the SEC did not provide him with documentation regarding EDGAR access codes or communications with Mr. Freer in a timely manner, although he did receive this documentation on September 11, 2017, through a FOIA request. *Id.* ¶ 47.

### B. Plaintiff's Alleged Causes of Action

Mr. Chien alleges that the SEC staff withheld from him and eventually provided to Mr. Freer certain access codes that CHBM requires in order to make its filings with the SEC. Mr. Chien and Mr. Freer both claim to be the proper holder of those codes. Count I of Plaintiff's First Amended Complaint alleges that Ms. Ransom and SEC Commissioner Kara Stein ("Commissioner Stein") violated 28 U.S.C. §2680 by failing to exercise due care and making misrepresentations in connection with accepting a company registered in Virginia as the legitimate CHBM. First Am. Compl., ECF No. 29, ¶ 63.

Count 2 alleges that Ms. Ransom and Commissioner Stein violated 28 U.S.C. §2680 by failing to exercise good care and by abusing process because they acted to protect Mr. Freer's fraud. *Id.* ¶ 64. Count 3 alleges that Ms. Ransom aided and abetted Mr. Freer in "making false identi[t]y of CHBM." *Id.* ¶ 65. Count 4 alleges that Ms. Ransom, in violation of Mr. Chien's alleged constitutional right to operate a business, damaged his employment and reputation and caused him to suffer economic loss when he could not

make filings on behalf of CHBM. *Id. ¶ 66.* Furthermore, Mr. Chien alleges that through her failure to "judge the environment under which Freer obtained the Stock Certificate," Ms. Ransom "supported" Mr. Chien's alleged false imprisonment. *Id. ¶¶ 66-67.* Count 5 alleges that Ms. Ransom engaged in a conspiracy to conceal from Mr. Chien the documents submitted by Mr. Freer. *Id. ¶ 68.* Count 6 alleges that Commissioner Stein was grossly negligent for her failure to monitor or train Mr. Ransom. *Id. ¶ 69.* In his First Amended Complaint, Mr. Chien seeks only money damages, in the form of punitive damages, and "legal or other" costs. *Id. ¶¶ 72-74.*

## II. Legal Standard

### A. Subject Matter Jurisdiction under Rule 12(b)(1)

A court must dismiss a case pursuant to Federal Rule 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.")

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005) ("At the

motion to dismiss stage, counseled complaints as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact."); *Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007) ("[A] court accepts as true all of the factual allegations contained in the complaint and may also consider 'undisputed facts evidenced in the record'") (internal citations omitted). Despite the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. United States Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint. . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted), *aff'd*., 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008). A court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasam v. Allain*, 478 U.S. 265, 286 (1986)).

### B. Failure to State a Claim under Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To survive a motion to dismiss under Rule 12(b)(6),

a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks and citations omitted). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III. Legal Analysis of the Motion to Dismiss

#### A. Individual Defendants
#### 1. Substitution of the United States

Pursuant to The Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679 (the "Westfall Act"), "federal employees [are permitted] absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). This relieves such employees from "the cost and effort of defending [a] lawsuit, and [ ] plac[es] those burdens of the Government's shoulders." *Wuterich v. Murtha*, 562 F.3d 375, 380 (D.C.

Cir. 2009) (quotation omitted). In the event that a federal employee is sued for wrongful or negligent conduct, the Attorney General may certify that such employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Osborn*, 549 U.S. at 229-30; 28 U.S.C. § 2679(d)(1)-(2). Upon certification by the Attorney General, "the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee." *Id.* at 230.

In a Westfall case, the court considers more than the allegations in the complaint to determine whether a defendant acted within the scope of his employment. *See Osborn*, 549 U.S. at 231, 249. The Attorney General's certification that the defendant was acting as such is prima facie evidence of that fact. *Council on Am. Islamic Relations v. Ballenger*, 444 F. 3d 659, 662 (D.C. Cir. 2006); *see Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008) (A Westfall Act certification carries "a rebuttable presumption that the employee has absolute immunity from the lawsuit and that the United States is to be substituted as the defendant."); *see also Stokes v. Cross*, 327 F.3d 1210, 1213 (D.C. Cir. 2003) (A district court should not treat a Westfall Act certification as conclusive evidence, and a plaintiff may challenge "the government's scope of employment determination.") To rebut the certification, the plaintiff must allege, either in the complaint or a subsequent filing, specific facts that, when taken as true, "establish that the defendant['s] actions exceeded the scope of [his] employment." *Stokes*, 327 F.3d 1210, 1215 (D.C. Cir. 2003).

In the instant case, Defendants have submitted a certification [39-1] by Daniel F. Van Horn, Chief of the Civil Division of the United States Attorney's Office for the District of Columbia. Mr. Van Horn certifies that "Securities and Exchange Commission ("SEC") employee Mara L. Ransom and SEC Commissioner Kara M. Stein were acting within the

scope of their employment as employees of the Federal Government at the time of the alleged incidents." Certification, ECF No. 39-1. Plaintiff has not attempted to rebut that certification, and the Court agrees that Ms. Ransom and Commissioner Stein were acting in the scope of their employment with regard to the actions alleged by Plaintiff relating to resolution of the disputed EDGAR access codes. There is no indication that the actions of the individual defendants exceeded the scope of their employment. *See Jacobs v. Vrobel*, 724 F.3d 217, 222 (D.C. Cir. 2013) (holding that the scope-of-employment test "is akin to asking whether the defendant merely was on duty or on the job when committing the alleged tort") (quoting *Harbury v. Hayden*, 522 F.3d 413, 422 n.4 (D.C. Cir. 2008). Accordingly, the United States shall be substituted as the defendant in place of the two individual defendants.

### 2. Claims against the Individual Defendants in their Individual Capacity

At this point, it is also necessary to address whether the two initially-named individual Defendants have been sued solely in their official capacities. The Court notes that it is unclear from the First Amended Complaint whether the Plaintiff intended to sue Ms. Ransom and Commissioner Stein in their individual capacities in addition to being sued in their capacity as SEC employee and SEC commissioner. Mr. Chien's Opposition implies, however, that he intended to sue Ms. Ransom in her individual capacity, as he notes that "the spirit of one person can't be split" and further, that there is "no sign of the mail service causing any inconvenient or legal prejudice at defendants." Pl.'s Opp'n to the Mot. to Dismiss, ECF No. 41, at 12.

Pursuant to Fed. R. Civ. P. 4(i)(3), "[t]o serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties

performed on the United States' behalf . . ., a party must serve the United States and also

serve the officer or employee under Rule 4(e), (f), or (g)." Fed. R. Civ. P. 4(i)(3). Pursuant

to Rule 4(e)(2), an individual may be served by doing any of the following:

> (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2)(A)-(C); *see Wilson v. U.S. Park Police*, 300 F.R.D. 606, 608 (D.D.C.

2014) ("When an officer or employee of the government is sued in his or her individual

capacity, . . ., personal service on the officer or employee is required.") Here, Mr. Chien

has purported to serve Ms. Ransom and Commissioner Stein by certified mail or priority

mail at the address for the SEC. *See* Returns of Service/Affidavits, ECF Nos. 5, 33. Ms.

Ransom was served by certified mail addressed to her at the Department of Corporation

Financing in the SEC, while Commissioner Stein — in her capacity as a Commissioner—

was served by certified mail and/or priority mail at the SEC address.

There is no evidence that either was served in person or at her home or through an

authorized agent. Accordingly, because Ms. Ransom and Commissioner Stein were not

personally served, any claims against them in their individual capacity are not viable and

should be dismissed. "Rule 4 says that the court must dismiss an action when the plaintiff

fails to serve the defendant within 120 days of the complaint being filed." *Wilson*, 300

F.R.D. at 608 (internal citations and quotes omitted). With regard to the claims against Ms.

Ransom and Commissioner Stein in their capacity as SEC employees, as previously noted,

the United States has been substituted in their place. Having clarified that Plaintiff's claims

are limited to the individual Defendants' actions in their official capacities and having

permitted the United States to be substituted as a Defendant in place of those individual Defendants, the Court finds that Ms. Ransom and Commissioner Stein shall be dismissed as Defendants. The Court will now address the Federal Tort Claims Act.

**B. The Federal Tort Claims Act**

In this case, Plaintiff's suit will be governed by the Federal Tort Claims Act as The United States has been substituted as a Defendant; the totality of Plaintiff's claims against Defendant sound in tort; and Plaintiff seeks money damages as relief for his claims. *See Wuterich*, 562 F.3d at 380 (after a Westfall substitution in a tort case, the suit is governed by the FTCA). Accordingly, Plaintiff must satisfy the requirements of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. "The FTCA operates as a limited waiver of sovereign immunity, rendering the United States amenable to suit for certain, but not all, tort claims." *Rashad v. D.C. Central Detention Facility*, 570 F. Supp. 2d 20, 23 (D.D.C. 2008) (citing *Richards v. United States*, 369 U.S. 1, 6 (1962)). "The federal government, its agencies, and federal officials when sued in their official capacities, are absolutely shielded from tort actions for damages unless sovereign immunity has been waived." *Kline v. Republic of El Salvador*, 603 F. Supp. 1313, 1316 (D.D.C. 1985) (citing *United States v. Testan*, 424 U.S. 392, 399 (1976); *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (Without a waiver, "sovereign immunity shields the Federal Government and its agencies from suit.") Generally, the FTCA provides that the "United States shall be liable [for tort claims] in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674(a). The FTCA also establishes requirements for administrative exhaustion of claims and timely filing of administrative claims. 28 U.S.C. § 2401(b).

### C. Exhaustion of Remedies

"Under the FTCA, a plaintiff may sue the government for 'injury or loss of property. . . caused by the negligent or wrongful act or omission of any employee of the Government.'" *Himex Co. v. United States* 17 F. Supp. 3d 77, 80 (D.D.C. 2014) (citing 28 U.S.C. § 1346(b)(1)).   In order to bring suit under the FTCA, a claimant must first exhaust his administrative remedies.  Specifically, Section 2675(a) provides that :

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within   the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim of purposes of this section.

28 U.S.C. § 2675(a).  The plain language of the FTCA bars a plaintiff from filing suit before he or she has exhausted these administrative remedies.  *McNeil v. United States*, 508 U.S. 106, 112 (1993) ("[T]he most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process[.]") "Where a plaintiff does not exhaust his administrative remedies, the FTCA bars his tort claims." *Bannum v. Samuels*, 221 F. Supp. 3d 74, 85 (D.D.C. 2016) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)); *see also Menifee v. U.S. Dep't of the Interior*, 931 F. Supp. 2d 149, 161 (D.D.C. 2013) (finding that exhaustion under the FTCA "includes the requirement that claimants first bring their claims to the agency, and that the claims have been denied by that agency [and further, that] [t]he exhaustion requirement is jurisdictional." (internal citations omitted)).

In the case before this Court, Plaintiff's Amended Complaint states that "[t]his

complaint contains allegations of omission of exercising due care, malicious prosecution, abuse of process, libel, slander, misrepresentation, and deceit which are exempted from Form 95 procedure of FTCA pursuant to [the introduction to] 28 USC § 2680 (a) & (h)."[5] First Am. Compl., ECF No. 29, ¶9. The introduction to 28 U.S.C. § 2680 states that "[t]he provisions of this chapter and section 1346(b) of this title shall not apply to [certain claims]." 28 U.S.C. § 2680. Accordingly, in his Amended Complaint, Plaintiff appeared to claim that he was exempt from filing an administrative claim. Plaintiff's reading of Section 2680 to refer to exhaustion of administrative remedies is inconsistent however with the actual application of this section to the FTCA's waiver of sovereign immunity. *Peter B. v. United States*, 579 F. Supp. 78, 82 (D.D.C. 2008); *James v. United States*, 48 F. Supp. 3d 58, 64 (D.D.C. 2014).

In response to Defendants' argument that Plaintiff is misreading the statute, Plaintiff argues alternatively that his emails to Commissioner Stein (and letters attached to or duplicative of the emails) constitute an adequate administrative claim. Pl.'s Opp'n to the Mot. to Dismiss, ECF No. 41, at 4-5. These emails allege that Ms. Ransom had prevented Mr. Chien from making SEC filings, which harmed his job and reputation and caused him financial loss. Plaintiff attached a draft complaint seeking an apology from the SEC and $100,000 from Ms. Ransom, as opposed to the $500,000 sought from the SEC (Commissioner Stein) and $1,000,000 sought from Ms. Ransom in Plaintiff's First Amended Complaint. *See* Pl.'s App'x III, ECF Nos. 41-1, at 10-31 (A313-A334); First

---

[5] Standard Form 95 is used to present claims against the United States to Federal Agencies under the FTCA for property damage, personal injury, or death allegedly caused by a federal employee's negligence or wrongful act or omission occurring within the scope of the employee's federal employment. *See* 28 C.F.R. § 14.2.

Am. Compl.¶¶ 72-75. There was no reason for the SEC to consider these emails as administrative FTCA claims, as these emails threatened litigation based on provisions of the Constitution, the securities laws, FOIA, and some vague tort claims, and they asked for resolution of "the confliction in the next three weeks" and failed to specify that the SEC was being asked to pay damages. Pl.'s App'x III, ECF No. 41-1, at 11 (A314). Even assuming *arguendo* that the emails were construed as FTCA administrative claims, they do not allege the torts at issue in this case and do not seek the same damages. A plaintiff's written claim does not satisfy the FTCA administrative claim requirement where it does not set forth a "sum certain," but instead submits contradictory claim amounts. *See Cureton v. U.S. Marshal*, 322 F. Supp. 2d 23, 27 (D.D.C. 2004) (finding contradictory claim amounts between the letter demand, demand within the Form 95, and the complaint).

"Under the FTCA, exhaustion occurs once a claimant has presented the appropriate federal agency with a claim describing the alleged injury with particularity and setting forth a sum certain of damages and the agency has (1) denied the claim in writing or (2) failed to provide a final disposition within six months of the claim's filing." *Cureton*, 322 F. Supp. 2d at 26-27 (internal citations and quotes omitted); 28 U.S.C. § 2675(a). In the instant case, both the Plaintiff's claims and the damages demanded have changed between the time Plaintiff emailed the SEC and the time he filed his Complaint. Accordingly, the FTCA's administrative claim requirement has not been satisfied and Mr. Chien's argument that he exhausted his administrative claim through his use of emails fails.

The requirement of administrative exhaustion can be jurisdictional, or it can be non-jurisdictional. *Avocados Plus Inc. v. Veneman*, 370 F. 3d 1243, 1247 (D.C. Cir. 2004). Non-jurisdictional exhaustion refers to "a judicially created doctrine requiring parties who

seek to challenge agency action to exhaust available administrative remedies before bringing their case to court." *Id.* In contrast, jurisdictional exhaustion requires a plaintiff to "resort to the administrative process as a predicate to jurisdictional review." *Id.* "[U]nless 'Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision,'" there is a presumption that exhaustion is non-jurisdictional. *Id.* at 1248 (quoting *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus*, 727 F.2d 1204, 1208 (D.C. Cir. 1984). However, courts cannot excuse the requirement of exhaustion where "Congress requires resort to the administrative process as a predicate to judicial review." *Avocados Plus*, 370 F.3d at 1247. In this Circuit, "the FTCA's requirement of filing an administrative complaint with the appropriate agency prior to instituting an action [is treated as] jurisdictional." *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997); *see also GAF Corp v. United States*, 818 F.2d 901, 904-905 (D.C. Cir. 1987) (The FTCA exhaustion requirement is jurisdictional). Denial, or deemed denial, is part of this jurisdictional prerequisite too. *See McNeil*, 508 U.S. at 112 (interpreting Section 2675(a) as "indicat[ing] that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process.")

Furthermore, as the D.C. Circuit explained in *Hohri v. United States*, a court may not waive the FTCA's exhaustion requirement on equitable grounds:

Under 28 U.S.C. § 2675(a) a plaintiff must file his claim with the appropriate government agency before bringing suit in federal court. This explicit statutory directive applies without exception and therefore has been termed "jurisdictional." *See Odin v. United States*, 656 F.2d 758, 802 (D.C. Cir. 1981). The FTCA's mandatory administrative filing requirement is not to be confused with the prudential, judge-made exhaustion doctrine, or other requirements that indicate a general, but not an inexorable, rule. Unlike the exhaustion requirement, the jurisdictional FTCA filing requirement is not subject to equitable waiver . . . Appellants ['] FTCA claims therefore must be dismissed for failure

to meet the statute's stringent "file first with the agency" instruction.

782 F. 2d 227, 245-46 (D.C. Cir. 1986), *rev'd on other grounds*, 482 U.S. 64 (1987); *see also Hayes v. United States,* 539 F. Supp. 2d 393, 398-399 (D.D.C. 2008) ("Because the FTCA is a limited waiver of the United States' sovereign immunity, this administrative exhaustion requirement is a jurisdictional prerequisite; and the Court lacks subject matter jurisdiction over common law tort claims against the United States for which a plaintiff has not exhausted his administrative remedies." (citations omitted)).  Here, Mr. Chien did not administratively exhaust his remedies under the FTCA prior to filing the instant suit.  This Court therefore lacks subject matter jurisdiction over Plaintiff's FTCA claims, and the case may be dismissed on those grounds alone.  *See, e.g., Smith v. Clinton*, 886 F.3d 122, 127 (D.C. Cir. 2018) (per curiam) (affirming dismissal of certain claims for lack of subject-matter jurisdiction in absence of exhaustion).

Although the Supreme Court has affirmed a flat dismissal for failure to comply with 28 U.S.C. §2675(a), this Court shall consider more recent precedent from the D.C. Circuit, which has squarely considered and found that such dismissal should be without prejudice. *Compare McNeil*, 508 U.S. at 109, 113 (affirming dismissal without discussing prejudice issue) *with Simpkins v. D.C. Gov't*, 108 F.3d 366, 370-72 (D.C. Cir. 1997) (reversing in part a dismissal with prejudice and remanding for dismissal without prejudice); *see also M.J. v. Georgetown Univ. Med. Ctr.,* No. 13-5321, 2014 WL 1378274 (D.C. Cir. Mar. 25, 2014 (per curiam) (modifying a district court's dismissal on the authority of *Simpkins*). Accordingly, a dismissal of this case based on Plaintiff's failure to exhaust his administrative remedies and the resulting lack of subject matter jurisdiction would be a dismissal without prejudice. Because the Defendants' Motion to Dismiss also propounds

various exceptions to a waiver of sovereign immunity and that argument has been fully briefed, the Court will analyze the applicability of those exceptions in this Opinion.

### D. The "Intentional Torts" Exception to the FTCA's Waiver of Sovereign Immunity

The counts alleged in Plaintiff's First Amended Complaint, ECF No. 29, may be summarized as follows:

- Count 1 – Claims against all Defendants for Abuse of Authority and Misrepresentation (accepting the Virginia registration of CHBM)
- Count 2 - Claims against all Defendants for Reckless Abuse of the Securities Laws (protecting Mr. Freer's fraud when assigning EDGAR codes)
- Count 3 – Claims against Ms. Ransom for Aiding Mr. Freer in Maintaining a False Corporate Identity
- Count 4 – Claims against Ms. Ransom for Depriving Mr. Chien of his Ability to Conduct Business, Injuring his Reputation, and Supporting his False Imprisonment
- Count 5 – Claims against Ms. Ransom for Conspiracy to Conceal Mr. Freer's Fraud
- Count 6 – Claims against Commissioner Stein for Gross Negligence in Monitoring and Training Ms. Ransom

In general, the United States has sovereign immunity from being sued absent explicit statutory waiver. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (Without a waiver, "sovereign immunity shields the Federal Government and its agents from suit.") One means of statutory waiver of sovereign immunity is the FTCA, which operates as a limited waiver of sovereign immunity and makes the United States amenable to suit for certain tort claims, subject to certain exceptions set forth in 28 U.S.C. § 2680. *See Richards v. United States*, 369 U.S. 1, 6 (1962), *Millbrook v. United States*, -- U.S. --, 133 S. Ct. 1441 (2013).

"The intentional torts exception to the FTCA's waiver of sovereign immunity bars "any claim arising out of . . . false imprisonment, false arrest, . . . abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h); "[T]he United States is . . . immune not just for claims enumerated in 28 U.S.C. § 2680 (h), but also for any 'claim arising out of' these claims." *Peter B.*, 579 F. Supp. 2d

at 82-83 (quoting *Kugel v. United States*, 947 F. 2d 1504, 1507 (D.C. Cir. 1991)). For purposes of determining "the essential nature of the cause of action," it is necessary to look at the "government conduct that is alleged to have caused the injury[.]" *Edmonds v. United States*, 436 F. Supp. 2d 28, 35-36 (D.D.C. 2006).

In this case, Defendants assert that Counts 1, 2, 3, and 5 allege or arise out of fraud or misrepresentation and because there is no waiver of sovereign immunity with regard to claims of fraud and misrepresentation, the Court lacks jurisdiction over these claims, and they should be dismissed. *Maxberry v. Dep't of the Army, Bd. of Correction of Military Records*, 952 F. Supp. 2d 48, 51-52 (D.D.C. 2013) (where a pro se plaintiff's claims were construed as allegations of tortious actions such as fraud and misrepresentation, the court lacked jurisdiction over such claims because they fell within an exemption to the FTCA's general waiver of sovereign immunity). Defendants contend that Count 2 also arises out of an abuse of process, which falls within Section 2680(h)'s exception to the FTCA's waiver of sovereign immunity and thus, Count 2 should be dismissed on that basis as well. Plaintiff's Opposition — while not a model of clarity — confirms that his tort claims are the types of intentional torts excluded from the FTCA's waiver of sovereign immunity.

Turning to Count 4, Plaintiff alleges claims of or arising from false imprisonment, interference with contract rights, and libel or slander. With regard to false imprisonment, Mr. Chien acknowledges that "[Ms.] Ransom didn't have any involvement with Chien's incarceration," First Am. Compl., ECF No. 29, ¶ 67, at the same time he alleges that she in some way "supported Freer Parties extortion and kidnapping of Chien." *Id.* Defendants argue that a claim for false imprisonment is exempt from the waiver of sovereign immunity. *See* 28 U.S.C. §2680(h).

Furthermore, in Count 4, Mr. Chien asserts a violation of his constitutional right to operate a business, but he doesn't propose any basis for a constitutional claim. Rather, he appears to claim interference with contract rights or possible business advantages when "[Ms.] Ransom[,] by not allowing Chien [to ] represent[] CHBM [to make] an[y] SEC filing damaged Chien's job, and reputation, causing Chien econom[ic] loss." First Am. Compl., ECF No. 29, ¶ 66. Plaintiff contends that this interference with his ability to make SEC filings on behalf of CHBM caused loss in the "intellectual value of the common stock" and a lost opportunity involving a "cash offer." First Am. Compl, ECF No. 29, ¶ 1. Mr. Chien's claim for interference with his business rights falls within the intentional torts exception to sovereign immunity because, pursuant to the FTCA, "sovereign immunity is not waived as to 'any claim arising out of . . . interference with contract rights.'" *Daisley v. Riggs Bank, NA*, 372 F. Supp. 2d 61, 77-78 (D.D.C. 2005) (quoting 28 U.S.C. § 2680(h)) (dismissing a civil conspiracy claim that was based on a tort for interference with contract rights); *see also Cornish v. United States*, 885 F. Supp. 2d 198, 207 (D.D.C. 2012) (holding that claims for "interference with prospective business advantage" may be barred as "claims arising out of interference with contract rights.")

Finally, Mr. Chien's Count 4 alleges that Ms. Ransom's actions in preventing him from representing CHBM and making SEC filings caused him to suffer reputational damage, which also falls within the intentional tort exception to waiver of sovereign immunity. "Among the claims excepted from the FTCA's waiver of sovereign immunity are claims arising out of libel or slander, . . ., including defamation claims." *Greene v. Nguyen*, No. Civ. Action No. 05-0407, 2005 WL 3275897, at *5-6 (D.D.C. Sept. 7, 2005) (citing 28 U.S.C. § 2680(h); *Gardner v. United States*, 213 F.3d 735, 738 n.1 (D.C. Cir.

2000) (barring a defamation claim under the FTCA); *Sottile v. United States*, 608 F. Supp 1040, 1042 (D.D.C. 1985) ("The United States still retains its sovereign immunity with respect to defamation and tortious interference with a contract").

In sum, Mr. Chien's claims encompassed within Court 4 relate to false imprisonment, interference with his business rights and reputational harm (defamation or slander). Mr. Chien does not deny that he is alleging intentional torts, nor does he address the intentional tort exception directly. Instead he seems to rely on the alleged sufficiency of pleading "tort[s] for which a private individual could be held liable under [state] law," Pl.'s Opp'n to the Mot. to Dismiss, ECF No. 41, at 9, which actually supports the Government's argument that Plaintiff's claims are tort claims that are excluded from the FTCA's waiver of sovereign immunity. As indicated above, all of Plaintiff's tort claims for fraud/misrepresentation and other intentional torts are excepted from the FTCA's waiver of sovereign immunity, and accordingly, Counts 1-5 of the Plaintiff's First Amended Complaint shall be dismissed because this Court lacks jurisdiction over the claims contained therein.

**E. The "Discretionary Function Exception" to the FTCA's Waiver of Sovereign Immunity**

"Under 28 U.S.C. § 2680(a) – also knows as the 'discretionary function exception' to the FTCA – the federal government is immune from liability for agents' decisions that 'involve an element of judgment or choice.'" *Smith v. United States*, 157 F. Supp. 3d 32, 41-42 (D.D.C. 2016) (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)). *See also Martinez v. United States*, 587 F. Supp. 2d 245, 248 (D.D.C. 2008) (Kollar-Kotelly, J.) (There is no waiver of the United States' sovereign immunity under the FTCA for claims

involving a government employee's "exercise, performance or failure to exercise or perform a discretionary function or duty" regardless of whether the "discretion involved [is] abused.")

In *Martinez*, this Court explained the two-step test established by the Supreme Court in *Gaubert*, 499 U.S. 315, (1991), to determine whether the discretionary function exception applies:

> The discretionary function exception covers only acts that are discretionary in nature, acts that involve an element of judgment or choice. If a binding federal statute, regulation, or policy specifically prescribes a course of action for the employee to follow, then the employee has no rightful option but to adhere to the directive. Otherwise, where the challenged conduct involves an element of judgment and is of the nature and quality that Congress intended to shield from tort liability, the United States is immune from an FTCA suit. The purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

*Martinez*, 587 F. Supp. 2d 245, 248 (internal citations and quotation marks omitted).[6]

Defendants argue that Mr. Chien's Count 6 alleging Commissioner Stein's gross negligence in "monitoring and training what Ms. Ransom did" falls within the discretionary function exception, and Plaintiff proffers no argument to the contrary. *See Smith v. United States*, 157 F. Supp. 3d 32, 41-42 (D.D.C. 2016) (noting that federal government decisions regarding hiring and employee supervision "are generally held to 'involv[e] the exercise of political, social, or economic judgment,' and therefore, to fall within the scope of the United States' sovereign immunity.") (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997). The *Smith* court noted that this immunity

---

[6] In his Surreply, Plaintiff asserts that "[i]t is common sense that officers are responsible for the consequence of their decision," but he provides no further explanation or support for this statement. Pl.'s Surreply, ECF No. 46, at 8.

included decisions about training employees.  157 F. Supp. 3d at 41-42.  Accordingly, the Government has sovereign immunity on claims regarding supervision and training as these claims fall squarely within the discretionary function exception to a waiver of immunity, and Plaintiff's Count 6 shall be dismissed.

With regard to the claims against the SEC, Defendants contend that all of Mr. Chien's counts against the SEC ultimately relate to the decision to suspend the EDGAR access codes and eventually provide the codes to Mr. Freer as opposed to providing them to Mr. Chien.  Defendants assert that Mr. Chien "appears to argue (Opp'n at ¶¶ 10-11) that SEC employees violated a mandatory obligation, implying that the decision was not an exercise of discretion."  Defs' Reply, ECF No. 45 at 6.  Defendants note however that Mr. Chien had not identified any binding "federal statute, regulation or policy [that] specifically prescribes a course of action for the employee to follow" with regard to assignment of EDGAR codes. *Martinez*, 587 F. Supp. 2d 245, 248 (D.D.C. 2008).  In his Surreply, Mr. Chien identifies the following mission statement posted on the SEC's website: "The mission of the SEC is to protect investors, maintain fair, orderly, and efficient markets, and facilitate capital formation.  The SEC strives to promote a market environment that is worthy of the public's trust."  Pl.'s Surreply, ECF No. 46, at 7.  Mr. Chien argues that it is the SEC's duty to "monitor the public companies in transparency to investors for executing its mission[.]" Pl.'s Surreply, ECF No. 46, at 7-8.  On its face, this SEC mission statement does not prescribe a course of action with regard to the EDGAR access codes nor is it a federal regulation or policy.

The SEC asserts that there was no binding policy prescribing a course of action regarding EDGAR code access; rather, the SEC's decision in this case was based on an

evaluation of the information provided by Mr. Freer and Mr. Chien, where neither provided a "definitive court decision or settlement resolving corporate control of CHMB in response to [Ms.] Ransom's February 2017 letter." Mem. in Support of Mot.to Dismiss, ECF No. 39, at 21.

Defendants explain that:

> [The Commission] had to balance the wisdom, practicability, and economic expediency of continuing to prevent the release of information about CHBM to the public and then consider whether to release the codes to Chien or Freer. This required the weighing of interests of ensuring that investors have complete, timely, and accurate information about a company; protecting investors by preventing abuse of the EDGAR system; and minimizing the risk that conflicting, confusing, or misleading filings would be publicly available through an official SEC database.

*Id.* The Court notes that Defendants' consideration of competing interests during their decision-making process fits squarely within the SEC mission statement referenced by Mr. Chien. In this case, there was no prescribed course of action for the SEC employees, and accordingly, they exercised their judgment, and based on the incomplete information received, they made an administrative decision to release the EDGAR codes to Mr. Freer. Their conduct falls within the discretionary function exception to the FTCA's waiver of sovereign immunity, and Mr. Chien's claims based on assignment of EDGAR access codes shall be dismissed based on this Court's lack of subject matter jurisdiction.

### F. Remaining Issues

This Court has determined that it is without subject matter jurisdiction over the Plaintiff's claims in his First Amended Complaint based both on Plaintiff's failure to exhaust his administrative remedies and application of the intentional torts and discretionary function exceptions to the Defendants' waiver of sovereign immunity. Accordingly, the Court finds it unnecessary and duplicative to address Defendants'

argument that Mr. Chien's claims are facially implausible and fail to state a claim pursuant to Rule 12(b)(6). The Court notes further that the FTCA does not provide for punitive damages, which have been requested by Mr. Chien. *See* 28 U.S.C. § 2674 ("The United States . . . shall not be liable for interest prior to judgment or for punitive damages.") Accordingly, Mr. Chien's entire claim for damages can be dismissed.[7] Furthermore, based on this Court's determination that Plaintiff's [29] First Amended Complaint shall be dismissed in its entirely, the Plaintiff's [40] Motion for an Injunction Order Due to Rule 65(a) and to Enforce the Filing of Administrative Records, and [42] Motion to Add Brant Morris as a Defendant based on Rule 15(d) shall be denied as moot.

### IV. Conclusion

For the reasons set forth in detail herein, this Court PERMITS the SUBSTITUTION of the United States for named-defendant SEC employee Mara Ransom and named-defendant SEC Commission Kara Stein and DISMISSES Ms. Ransom and Commissioner Stein as defendants in this legal action. The Court STRIKES from the docket Plaintiff's [49], [50] Supplements relating to the Fair Debt Collection Practices Act but PERMITS the late filing of Plaintiff's [47] Reply in Support of his Motion for an Injunctive Order and an Administrative Record, and Plaintiff's [48] Reply in Support of his Motion to Add Brant Morris as a Defendant. The Court further PERMITS the filing of Plaintiff's [46] Surreply to the Defendants' Motion to Dismiss, although the Court has only considered those portions of Plaintiff's Surreply (pages 6-7) that are responsive to the claims in this case.

The Court finds Plaintiff has failed to exhaust his administrative remedies, and Plaintiff's claims in Counts 1-6 of his First Amended Complaint fall under either the

---

[7]Mr. Chien also claims legal costs even though he is acting *pro se*.

"intentional torts" and/or the "discretionary function " exceptions to the FTCA's waiver of sovereign immunity. Accordingly, this Court is without subject matter jurisdiction over Plaintiff's claims and the Defendants' [38] Motion to Dismiss shall be GRANTED and the case shall be DISMISSED WITH PREJUDICE.  Plaintiff's [40] Motion for an Injunction Order and an Administrative Records shall be DENIED AS MOOT, and Plaintiff's [42] Motion to Add Brant Morris as a Defendant shall also be DENIED AS MOOT.   A separate Order accompanies this Memorandum Opinion.

DATED: September 23, 2019          _____/s/_____

COLLEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE